131 N.J. Super. 264 (1974)
329 A.2d 567
IN THE MATTER OF CHARLES VACCARO, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1974.
Decided June 11, 1974.
*265 Before Judges HALPERN, MATTHEWS and BISCHOFF.
*266 Mr. George T. Dougherty argued the cause for appellant (Messrs. Katz, Bitterman & Dougherty, attorneys).
Miss Prudence H. Bisbee, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Petitioner Rose F. Vaccaro appeals from a decision of the Board of Trustees of the Division of Public Employees' Retirement System (Board), denying her application for disability retirement benefits under Option 1 of N.J.S.A. 43:15A-50.
The relevant facts are undisputed. Petitioner is the widow of Charles Vaccaro (decedent) who died on November 12, 1971, and is the beneficiary designated by decedent under Option 1 to receive the benefits of his retirement allowance. Decedent had been employed by the State Department of Transportation since 1952 and was a member in good standing of the Public Employees' Retirement System. During the summer of 1970 decedent was stricken and hospitalized with lung cancer. He returned to work but was again compelled to stop work because of his illness, and he was given a leave of absence from June 10, 1971 to September 10, 1971. During this three-month period he received medical treatments, of various types, in an attempt to arrest or cure his cancerous condition. By July 26, 1971, the doctors determined that decedent's illness was terminal, and that he would be unable to return to work.
On July 28, 1971 decedent filed his signed application for disability retirement benefits under Option 1 of N.J.S.A. 43:15A-50,[1] with the request it be effective as of August 1, *267 1971. The application was received by the Board on July 30, 1971. Due to decedent's inability to go to a doctor's office for a physical examination, the Board on August 4, 1971 directed Dr. Leo Goldman to examine decedent at his home. On or about September 1, 1971 decedent was again hospitalized for his illness, and the Board was notified on September 3, 1971 that Dr. Goldman had not yet made the examination. By letter of September 7, 1971 the Board directed Dr. Howard Levenson to make the examination at the hospital. Dr. Levenson made the examination on the same day, and his report of September 17, 1971 was received by the Board on September 20, 1971. On the next day the Board sent decedent's application, together with the supporting medical data, to the Board's Medical Review Board for its consideration. The Medical Review Board's report of October 4, 1971 was then sent to the Board. On October 19, 1971 decedent's retirement application was granted. It took 2 months and 20 days to process decedent's application.
The Board denied petitioner's claim for retirement death benefits on the basis that decedent had died on November 12, 1971, within 30 days of the date of the granting of his application on October 19, 1971. At the hearing before the *268 Board's designated Hearer, petitioner asserted that the Board improperly invoked the statutory time requirements since it was the Board's inefficiency in processing the application that permitted the 30-day statutory limitation period to be set up as a bar to the claim. The hearer determined the application was handled in a proper businesslike manner, and since petitioner failed to show bad faith on the Board's part, he recommended the application be denied. The Board, after considering the record, adopted the hearer's recommendation.
The narrow issue on appeal is whether the Board, with full knowledge of decedent's terminal illness, processed his application with reasonable dispatch. Unfortunately, the statute does not designate how soon an application should be processed. It merely denies benefits under Option 1 if the applicant dies within 30 days "after the date of retirement [here August 1, 1971] or the date of board approval [here October 19, 1971], whichever is later, his retirement allowance shall not become effective and he shall be considered an active member at the time of death."
Normally, pension statutes should be liberally construed in favor of employees eligible for retirement. In re Application of Smith, 57 N.J. 368, 374 (1971). We must assume that the Legislature intended that retirement applications be processed promptly and with due diligence, depending upon the circumstances existing in each case. Therefore, the Board's failure to act with due diligence should not bar recovery of benefits to one otherwise legally entitled thereto.
The Board's sole contention is that it did act diligently, and that it processed decedent's application within the normal time span of between two and five months. It asserts that for the year 1971 it acted on about 550 retirement applications. It stresses the fact that it is difficult to get doctors to make necessary physical examinations at a patient's home. The record indicates that in processing applications the Medical Review Board convened twice a month, and the Board of Trustees once a month. In short, it argues that we should consider decedent's application as a "deathbed" attempt to *269 defeat the statute. It relies upon De Nike v. Board of Trustees of State Employees' Retirement System, 34 N.J. 430 (1961), to support its contention. We disagree and hold that based on the facts in this case De Nike is not applicable.
On the record before us bad faith or fraud is not chargeable to the Board or petitioner. Certainly, in view of decedent's terminal illness and inability to continue work, he had a right to apply for the retirement benefits allowed under Option 1. He had no way of knowing how long he would live, and he did everything required of him to apply for his statutory benefits. The issue is whether the Board acted with reasonable dispatch in processing the application.
Under the factual circumstances existing in this case, we answer the question in the negative. The Board is under a statutory duty to properly process all applications for retirement benefits. N.J.S.A. 43:15A-17; State v. Deegan, 126 N.J. Super. 475 (App. Div. 1974), certif. den. 66 N.J. 151 (1974). Knowing from experience that it will have to process more than 500 applications a year, and the difficulty of getting doctors to examine applicants on a case by case basis, it should be staffed or have readily available to it sufficient medical and other personnel to make the required physical examinations within a reasonable time. The Medical Review Board and the Board of Trustees, when necessary, should convene more often than they do to effectuate the purposes of granting pensions to those entitled thereto. A span of two to five months to process applications strikes us as being unreasonably long. This is particularly true when it has knowledge of an applicant's admitted terminal illness, and is aware of the drastic effect of the 30-day period in N.J.S.A. 43:15A-50.
In dissecting the procedure followed to process decedent's application we find that (1) although the application was received by the Board on July 30, 1971, it was unable to get a doctor to examine decedent before September 7, 1971, a matter of 39 days; (2) it took 13 days (to September 20, 1971) after the examination was made for the doctor's report *270 to reach the Medical Review Board, and (3) the Medical Review Board made its report of October 4, 1971 to the Board of Trustees, who did not act upon it until October 19, 1971. If decedent had lived seven more days the statute would not have been available as a bar to petitioner's claim.
We see no valid reason, in law or equity, why this administrative lag of 2 months and 20 days should be at the expense of an employee entitled to statutory retirement benefits. We recognize that there must be some time spent in processing claims, but taking 2 months and 20 days to do so in this case is unreasonable and violates fundamental fairness. While we are unable to definitively state what period of time would be reasonable in every case, we are convinced that in the circumstances existing here, the Board did not act with reasonable dispatch in processing decedent's application, and that petitioner is entitled to receive the retirement benefits provided for under Option 1 of N.J.S.A. 43:15A-50.
The determination of the Board is reversed, and judgment to be entered in accordance herewith.
NOTES
[1] 43:15A-50. MEMBER'S OPTION ON RETIREMENT

Subject to the provisions of section 59 of this act, at the time of his retirement a member shall receive his benefits in a retirement allowance payable throughout life, or he may, on retirement, elect to receive the actuarial equivalent of his retirement allowance, in a lesser retirement allowance, payable throughout life, with the provision that:
Option 1. If he dies before he has received in payments the present value of his retirement allowance as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation acknowledged and filed with the retirement system, either in a lump sum or by equal payments over a period of years at the option of the payee. If the member shall have designated a natural person as the payee, said payee may elect to receive such payments in the form of a life annuity. * * *
Except in the case of members who have elected to receive (1) a deferred retirement allowance pursuant to section 38 or (2) early retirement allowances pursuant to section 41b after separation from service pursuant to section 38, if a member dies within 30 days after the date of retirement or the date of board approval, whichever is later, his retirement allowance shall not become effective and he shall be considered an active member at the time of death.