VICTOR J. MASSE, RESPONDENT, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, APPELLANT.

Argued April 7, 1981—Decided July 27, 1981.

*Robert A. Coogan* argued the cause for respondent Victor J. Masse.

*Bertram P. Goltz, Jr.*, Deputy Attorney General, argued the cause for Board of Trustees, Public Employees' Retirement System (*James R. Zazzali*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel; *Mr. Goltz* and *William P. Malloy*, on the brief.)

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiff challenges herein the disqualification by the Board of Trustees of the Public Employees' Retirement System (PERS) of 27 years of service toward his pension. The sole question before us is whether the applicable pension statutes require that a public employee who has satisfied the age and service requirements entitling him to a pension must forfeit all the creditable service which occurred prior to his conviction for conduct involving moral turpitude, even though the conduct is unrelated to his job performance.

The facts are undisputed. Plaintiff, Victor Masse, was first employed by the Borough of Highlands in 1947, after military service in World War II. About 1950 he left his position and returned in 1952. He worked continuously thereafter for the Borough, except for a three-week period when he was suspended because of an indictment in March 1976 for impairing the morals of a minor in violation of *N.J.S.A.* 2A:96–3 and for contributing to the delinquency of a minor in violation of *N.J.S.A.* 2A:96–4. On January 31, 1977, Masse pled guilty to two counts of the indictment. A sentence of concurrent terms of one to three years on each count was suspended and he was placed on probation for a two-year period and fined $1,000.

Plaintiff was employed as an Assistant Superintendent of Water and Sewers. His duties were primarily those of a foreman in the department. He had always been an excellent

employee and his record was spotless. On February 17, 1977, he applied for a pension to become effective on August 1, 1977. He was then 51 years old and had over 25 years of service credits in the Public Employees' Retirement System. Accordingly, he was qualified for "early retirement" under *N.J.S.A.* 43:15A–41. Masse withdrew his application in a letter dated July 7, 1977, stating his intention to remain at his job until he "reach[ed] the age for a regular retirement." Nevertheless, the Board of Trustees of PERS reviewed the application and advised Masse that he would not receive credit for any service before January 31, 1977 because that service was considered dishonorable and that he would receive credit for service rendered after February 1, 1977. The Board advised Masse to file a new enrollment application with an effective date of February 1, 1977.

Masse objected to the decision and was granted a hearing by the Division of Pensions. The Hearing Officer found it was the established administrative practice of the Board of Trustees of PERS to disallow all service prior to the date of conviction of a crime involving moral turpitude. However; service after the conviction was to be deemed honorable and credited toward the employee's pension. The Hearing Officer held that an employee obtains no vested property right to a pension, that honorable service is a condition precedent and that his entire past service becomes dishonorable when the conviction involves moral turpitude, even though the conduct is totally unrelated to public employment.

The Hearing Officer, applying these principles to Masse's case and noting that the offense involved moral turpitude, stated that it was "immaterial that Petitioner had some 31 years of service without a blemish on his record." He recommended disallowance of all service before January 31, 1977 and allowance of service thereafter. The Board of Trustees adopted the Hearing Officer's findings and recommendations.

The Appellate Division reversed. 175 *N.J.Super.* 325 (1980). We granted the Attorney General's petition for certification, 85 *N.J.* 478 (1981), and affirm.

The key issue in this case is discernment of the legislative intent, which, in the absence of legislative history, can be ascertained only by examination of the relevant sections of the pension act and related statutes. The Public Employees' Retirement System is a legislative scheme providing pensions for qualified state, county and municipal employees. *N.J.S.A.* 43:15A–6 *et seq.* Three basic components of pension eligibility are service, compensation and age. A member of the Public Employees' Retirement System who has attained 60 years of age may retire on a service retirement allowance by filing with the System a written application, *N.J.S.A.* 43:15A–47. The retirement allowance consists of an annuity, which is the actuarial equivalent of deductions from the employee's wages together with interest, and a pension, which is based upon the employee's final compensation multiplied by each year of service credited to him. *N.J.S.A.* 43:15A–48. Final compensation is based on a three-year average. *N.J.S.A.* 43:15A–6(h). Insofar as service is concerned, the employee is to be credited "with the time of all service rendered by him since he last became a member, and in addition with all the service to which he is entitled and with no other service." *N.J.S.A.* 43:15A–39. Under certain circumstances veterans are also entitled to some additional service credits. *N.J.S.A.* 43:15A–60.

The central issue in this case concerns what service may be calculated toward the pension. The word "service" is not defined in the statute. The language in *N.J.S.A.* 43:15A–39 does not limit or describe what is contemplated by service. However, at least one section, *N.J.S.A.* 43:15A–41(b), dealing with early retirement, refers to "creditable" service. It is self-evident that service must refer to the work performed and the responsibilities assumed by the employee for which he receives compensation. Thus, to be creditable service would require at least employee performance.

None of the provisions in this pension statute requires that the service be honorable. Some pension statutes, such as those involving policemen and firemen, *N.J.S.A.* 43:16–1, expressly

require that the service be honorable in order to be creditable. We perceive no basis for the distinction between the two classes of statutes. Indeed none has been suggested. Accordingly, we are satisfied that the Legislature must have intended honorable performance as a component of creditable service. See *Ballurio v. Castellini*, 29 *N.J.Super.* 383 (App.Div.1954) (court observed only nine of sixty pension statutes required honorable service, but finding no rational distinction concluded "honorable service is implicit in every such enactment").

It is necessary to define dishonorable service and consequently noncreditable time served. All other conduct and term of service would be honorable and creditable. Since the issue in this case concerns misconduct unrelated to the public employment, our analysis will be directed to that situation. Our inquiry will thus focus upon whether misconduct involving moral turpitude in a nonwork-related capacity causes some or all of the service rendered efficiently and well for the government to become noncreditable.

Where the misconduct related to the public employment that was the basis for the pension service, it has been held that a conviction arising out of that situation tainted the service causing loss of a possible pension. See *McFeely v. Board of Pension Commissioners*, 1 *N.J.* 212 (1948) (retired police chief's pension vacated pending disposition of indictment for nonenforcement of gambling statutes and conspiracy to "oppress" and "persecute" other members of the police force); *Plunkett v. Pension Commissioners of Hoboken*, 113 *N.J.L.* 230 (Sup.Ct. 1934), aff'd o.b., 114 *N.J.L.* 273 (E. & A. 1935) (fireman's pension forfeited upon his conviction on charges of misconduct in violation of departmental rules, including embezzlement of firemen's relief association funds); *Mount v. Trustees of Pub. Emp. Retirement Syst.*, 133 *N.J.Super.* 72 (App.Div.1975) (retired county engineer's pension suspended pending disposition of indictments for extorting money from a contractor and filing false income tax returns during his employment); *Hozer v. State, etc., Police & Firemen's Pension Fund*, 95 *N.J.Super.* 196 (App.

Div.1967), certif. den., 50 *N.J.* 285 (1967) (policeman's pension application denied where convicted of nonfeasance in office); *Fromm v. Bd. Directors of Police, etc., Retire. Syst.,* 81 *N.J.Super.* 138 (App.Div.1963) (policeman's service-related disability pension benefits terminated upon his conviction for altering and downgrading traffic tickets); *Pfitzinger v. Bd. of Trustees, etc., Retirement System,* 62 *N.J.Super.* 589 (Law Div.1960) (highway department inspector's pension application denied upon proof of numerous counts of misconduct in office, including extortion).

The concept that conviction of a crime involving moral turpitude related to the employment taints all the past service of an employee assumes a nexus between the dishonorable conduct and the public employment. The rationale supporting this proposition is that public employment encompasses a public trust which, *inter alia*, contemplates that the public employee will not denigrate the performance of that employment. See *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N.J.* 433, 474 (1952), *cert.* den., 344 *U.S.* 838, 73 *S.Ct.* 25, 97 *L.Ed.* 652 (1952); *Pfitzinger v. Bd. of Trustees, etc., Retirement System,* 62 *N.J.Super.* at 602–03. This is consonant with the underlying precept that there is a fiduciary relationship between employer and employee, see, *e.g., Auxton Computer Enterprises, Inc. v. Parker,* 174 *N.J.Super.* 418, 423–25 (App.Div.1980), and a strand in that relationship is that public service will be performed honorably. Thus it is contended that when the employee breaches that public trust, he has forfeited his entitlement to a pension based on service prior to the conviction. It is also argued that forfeiture is an added deterrent that inhibits an employee from committing misdeeds related to his employment and encourages faithful, diligent and efficient service. See *Plunkett v. Pension Commissioners of Hoboken,* 113 *N.J.L.* at 232–33.

We note that in the booklet distributed to public employees, the Division of Pensions, the agency entrusted with the administration of the Public Employees' Retirement System, has not mentioned or referred to the possible forfeiture of earned service because of an employee's misconduct. See New Jersey

Division of Pensions, *Public Retirement in New Jersey* (1973). This 26-page pamphlet describes in some detail pension benefits, eligibility requirements, and computation methodology. Though it refers to the "guaranteed" retirement income and enumerates circumstances under which membership in the plan may be terminated, *id.* at 4, 8, no reference is made to any forfeiture. Failure to apprise employees of that potential disqualification in this document decreases the probability that employees are aware of it and accordingly weakens any contention that the possibility of forfeiture encourages faithful and reliable service.

There has evolved some case law to the effect that if a public employee has been convicted of a crime involving moral turpitude unrelated to the employment, then, presumably in accordance with the legislative intent, all service rendered by the employee up to the date of his conviction would be forfeited. See *Gauli v. Trustees Police and Firemen's Ret. Syst.*, 143 *N.J.Super.* 480, 482 (App.Div.1976). This Court has never passed upon that proposition. Judge Botter in the Appellate Division opinion below has carefully analyzed this case law and noted that the concept was first formulated, but not applied, in *Ballurio v. Castellini*, 29 *N.J.Super.* at 389, and applied on only one occasion in *Gauli v. Police and Firemen's Ret. Syst.*, 143 *N.J.Super.* at 482–83. 175 *N.J.Super.* at 328.[1] Although we referred to this principle in *Makwinski v. State*, 76 *N.J.* 87, 90 (1978), we neither discussed nor relied upon it.

When the misconduct does not involve the public employment, the nexus is at best insubstantial. Such unrelated misconduct is certainly a significant step removed from the public trust that concerns the employer-employee relationship. The threat of

---

[1] The reference, made in the dissenting opinion of the companion case of *Proccacino v. State*, 87 *N.J.* 265, 268 (1981) (Clifford, J., dissenting) to *Mount v. Trustees of Pub. Emp. Retirement System*, 133 *N.J.Super.* 72 (App.Div. 1975), as a non-job-related misconduct case is misplaced. There a county engineer was charged with extortion from a contractor on work-related matters and filing false income tax returns arising out of the monies received.

forfeiture for unrelated misconduct does not impact upon the future performance of the public employment. This is not to say that a conviction of a crime involving moral turpitude may not be relevant to the individual's continued employment. See, e.g., N.J.S.A. 2C:51–2. However, what is at stake here is not future employment, but rather pension benefits accrued over past years of otherwise creditable service. It is extremely doubtful that the Legislature intended such a drastic penalty when the criminal offense was unconnected with and unrelated to the employment.

A statutory construction respecting such public service accords with the general policy of construing pension statutes liberally. In *Geller v. Dept. of the Treasury of New Jersey*, 53 *N.J.* 591, 597–98 (1969), this Court said:

> Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. [citation omitted] They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby.

See *In re Application of Smith*, 57 *N.J.* 368, 374 (1971); *Smith v. Consolidated Police & Firemen's Pension*, 149 *N.J.Super.* 229 (App.Div.1977), certif. den. 75 *N.J.* 8 (1977); *In re Vaccaro*, 131 *N.J.Super.* 264, 268 (App.Div.1974), aff'd o.b., 66 *N.J.* 151 (1974).

There are several legislative indications in the pension statute and elsewhere supportive of crediting the service. The legislative pension scheme recognizes that the pension is compensation for services rendered. *Cf. Chamber of Commerce of Eastern Union Cty. v. Leone*, 141 *N.J.Super.* 114, 137 (Ch.Div.1976), aff'd o.b., 75 *N.J.* 319 (1978) (court held retirement benefits under legislators' contributory pension plan, *N.J.S.A.* 43:15A–135 to –140, are "compensation" for services rendered, the right to which was earned during the term of office, stating "a pension is a legitimate mode of compensation for public employees" and "our State has long provided for such compensation to other public employees by way of the basic Public Employees Retire-

ment System"). The statute provides, for example, that a member who has completed 15 years of service and who voluntarily leaves may receive a pension when he attains retirement age. *N.J.S.A.* 43:15A–38.[2] This vesting assumes that compensation for the services rendered includes the pension benefit. It is comparable to provisions found in private pension plans and conforms with the principle enacted by Congress in the Employment Retirement Income Security Act (ERISA), 29 *U.S.C.A.* § 1053, that, once earned, certain pension benefits may not be forfeited except for some specified reasons, such as death or voluntary withdrawal from the plan. See also 26 *U.S.C.A.* § 411 of the Internal Revenue Code which contains similar requirements to "qualify" a pension plan for income tax purposes.

This legislative intent that the governmental pension constitutes compensation for services rendered over a period of time has been accorded substantial judicial recognition. See *Spina v. Consolidated Police, etc., Pension Fund Com.*, 41 *N.J.* 391, 401 (1964) (the government's contribution "[i]n part ... compensates for services already rendered"); *Watt v. Mayor and Council of Borough of Franklin*, 21 *N.J.* 274, 279 (1956) ("[t]he basic philosophy underlying pensions to public officers fluctuates between the early view that they were mere gratuities bestowed by the sovereign in recognition of meritorious service previously rendered and the more modern concept that they are some form of delayed wages or salary to compensate the employee during his declining years when he is apt to be less productive for his long and faithful service"); *Salz v. State House Commission*, 18 *N.J.* 106, 111–12 (1955) ("[a] public pension, while not contractual in nature, is akin to wages and salaries in that it is payable in stated installments for the maintenance of the servant after his

---

[2]In the statement accompanying *L.* 1954, *c.* 84, the source of *N.J.S.A.* 43:15A–38, reference was made to this statute as providing for "the vesting of the members' interest in the State's contributions after 20 years of service." The years of service required for vesting under *N.J.S.A.* 43:15A–38 was lowered to 15 by *L.* 1966, *c.* 217, § 6.

productive years have ended, and is basically a recompense for past services").

The compensatory nature of a pension is also evident in the negotiating process between public employees and their public employers. The Legislature in the New Jersey Employer-Employee Relations Act established methods for union representation to carry on collective negotiations on behalf of public employees with respect to their terms and conditions of employment. *N.J.S.A.* 34:13A–1 *et seq.* Excluded from the negotiating area is any provision that would "annul or modify any pension statute or statutes of this State." *N.J.S.A.* 34:13A–8.1. Though the parties may not alter the pension requirements, expectation of the pension is unquestionably factored into the demands, offers and ultimate resolution concerning employment terms and conditions. It is common knowledge that a pension is an element in encouraging qualified individuals to enter and remain in public service.

Another legislative guideline is found in *N.J.S.A.* 43:15A–38 which provides that a public employee who has completed 15 years of service and is "separated voluntarily or involuntarily from the service, before reaching service retirement age, *and not by removal for cause on charges of misconduct or delinquency*" (emphasis supplied) may elect to receive certain retirement allowances. By excepting those employees removed for cause on charges of misconduct or delinquency, the Legislature was essentially accommodating a policy that these privileges would not be appropriate for an employee discharged for misconduct in office. Yet the statutory provision would not affect the privileges of an employee whose criminal conviction arose from unrelated conduct. The failure of the Legislature to encompass such conduct when drafting this provision raises serious doubts about the claim that disqualification of employees engaging in such conduct is an essential part of the statutory pension scheme. It supports the notion that there is nothing implicit either in the nature of a public pension or a prerequisite of honorable service that mandates disqualifying service upon con-

viction of a crime involving moral turpitude unrelated to the public employment.

Other legislative provisions that impact upon the interpretation to be given to creditable service in the pension act deal expressly with the consequences of a public employee's criminal conviction. The Legislature had provided that any person holding an office or position, elective or appointive, who was convicted of a misdemeanor or high misdemeanor touching the administration of his office or position or which involves moral turpitude, forfeited his office or position. *N.J.S.A.* 2A:135–9. This statute was superseded in the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 *et seq.*, by even more expansive provisions which state that a person holding any public governmental office, position or employment who is convicted of a crime of the third degree or above, an offense involving dishonesty or an offense involving or touching upon his office, position or employment, shall forfeit that office or position. *N.J.S.A.* 2C:51–2(a). Additionally, the statute provides that any person convicted of an offense involving or touching upon his governmental position is "forever disqualified" from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions." *N.J.S.A.* 2C:51–2(c). These sections indicate that the Legislature has selected the penalties to be imposed upon public employees for offenses and crimes.

Moreover, the forfeiture statute expresses the public policy that an employee who committed an offense involving or touching on his employment, as distinguished from any other offenses, may not in the future be employed in an office or position of the State or of its administrative or political subdivisions. This expressed legislative policy is a recognition that offenses connected and related to public employment result in a greater sanction than when the offenses are not connected or related. Thus, when the Legislature has focused on offenses related and unrelated to the public employment, it has chosen to treat the offenders differently.

If the range of conduct that disqualifies service is judicially broadened to encompass criminal conduct unrelated to that service, an additional penal sanction would be imposed on individuals solely because of their status as public employees. Such a construction of creditable service would intrude into a sphere of the criminal justice system where the Legislature has fixed the limits of punishment and given the courts discretion, within certain guidelines, to determine sentences. *N.J.S.A.* 2C:44–1. For example, the sentencing judge, when determining the punishment, is to consider such factors as the nature of the offense and risk of recurrence, *N.J.S.A.* 2C:44–1(a)(1) and (3), the likelihood of affirmative response by the defendant to probation, *N.J.S.A.* 2C:44–1(b)(10), lack of a prior criminal record, *N.J.S.A.* 2C:44–1(b)(7), and the fact, if true, that defendant's conduct resulted from circumstances unlikely to recur, *N.J.S.A.* 2C:44–1(b)(8). The automatic service disqualification of a hardworking, faithful employee because of a criminal conviction for conduct totally unrelated to his job has harsh and disproportionate results over which the sentencing judge has no control.

Another legislative indicia may be found in *N.J.S.A.* 43:1–2 which provides that no pension benefits be paid to any person "for the period during which he is confined in a penal institution as a result of conviction of a crime involving moral turpitude . . .," but directs the pension board to make the payments to the "mother, father, wife or minor children" of the employee if the board finds the benefits "necessary for their maintenance." Thus, when the Legislature considered the effect of a conviction of a crime involving moral turpitude on public pension rights, it did so expressly. If it had desired to cause a forfeiture of earned service under *N.J.S.A.* 43:15A–47 because of conduct unrelated to the public employment, it could and would have done so in a comparable manner.

The dissent argues that legislative inaction following the dictum in *Ballurio* in 1954 and the holding in *Gauli* in 1976 indicates legislative approval and adoption of those principles.

*Proccacino v. State*, 87 *N.J.* at 265–268 (Clifford, J., dissenting). Legislative inaction under these circumstances is a "weak reed" indeed upon which to rely. 2A *Sutherland, Statutory Construction* (4 ed. 1973), § 49.10 at 261. Insofar as legislative intent is concerned inaction demonstrates nothing more than that subsequent legislatures failed to act. See *White v. Township of North Bergen*, 77 *N.J.* 538, 556 (1978). The intent expressed in the statute is a judicial question with respect to which the inaction of subsequent legislatures is not dispositive. *State v. Sands*, 76 *N.J.* 127, 137–38 n.1 (1978); *Schmoll v. Creecy*, 54 *N.J.* 194, 203 (1969).

■ Forfeiture of the 27 years of Masse's creditable, loyal service would constitute a harsh penalty without any legislative indication that the penalty is warranted. A judicially-created rule that automatically imposes an inflexible, arbitrary forfeiture of such magnitude upon public employees is inconsistent with an employee's long and faithful service and is not supportable by the language in the statute, language to be liberally construed in favor of recipients. Its incongruity is heightened when the public employee continues, as Masse did here, to render service that was creditable for pension purposes after the conviction. Sanctions for his improper conduct are fully covered by the penal code and additional punishment of forfeiture of his pension is not warranted in the absence of a legislative expression. See Note, 11 *Seton Hall L.Rev.* 599, 606–09 (1981).

Policy considerations advanced to support a forfeiture of unblemished service for conviction of a crime involving moral turpitude unrelated to this public employment are more properly directed to the Legislature. It is not a judge's function to read into a statute what the legislators ought to have agreed upon if they had possessed his wisdom and courage. Until the Legislature adopts such a forfeiture policy, courts should adhere to the legislation as written.

The judgment is affirmed.

CLIFFORD, J., dissenting.

The sordid details of the events that led to plaintiff's guilty plea on two counts of impairing the morals of a minor need not be recounted here. Suffice it to say that the incidents, obviously involving moral turpitude, were far removed from any connection with plaintiff's public employment.

The facts of this case may engender certain tender mercies in forbearance of a strict rule that non-job-connected crimes of moral turpitude equate with dishonorable service resulting in loss of pension credits earned up to the time of the offending conduct. But for the reasons expressed in my dissenting opinion in the companion case of *Proccacino v. State*, 87 *N.J.* 265 (1981), I would leave that major revision of our existing law to the Legislature.

I vote to reverse.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK —6.

*For reversal*—Justice CLIFFORD—1.