**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2586-17T1

CHRISTOPHER LYNCH,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

          Argued June 4, 2019 – Decided June 25, 2019

          Before Judges Messano and Rose.

          On appeal from the Board of Trustees, Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-88180.

          Samuel J. Halpern argued the cause for appellant.

          Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Porter Ross Strickler, Deputy Attorney General, on the brief.)

PER CURIAM

Christopher Lynch appeals from a January 9, 2018 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), imposing a total forfeiture of his pension service and salary credit due to misconduct, and concluding Lynch was ineligible to apply for accidental disability retirement benefits (ADRB) because the terms of a settlement agreement with his employer prohibited his return to work. We affirm.

I.

We commence our review with a discussion of the governing legal principles to give context to the Board's decision, recognizing "[o]ur review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we will not overturn an agency decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)). Nor will we overturn an agency decision merely because we would have come to a

different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011). We are not, however, bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007).

A public employee must provide "honorable service" to receive pension or retirement benefits. N.J.S.A. 43:1-3(a); N.J.A.C. 17:1-6.1(a); see also Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) (noting all of New Jersey's public pension statutes have an implied requirement of honorable service, and forfeiture can be ordered for employees who violate that requirement). The Board is authorized to order forfeiture, in whole or in part, "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable." N.J.S.A. 43:1-3(b); N.J.A.C. 17:1-6.1(a), (c). Ordinarily, to require forfeiture of the portion of a member's pension that accrued prior to the criminal activity, the Board must find that the misconduct was related to the member's service. Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252, 263 (1981). Nevertheless, forfeiture is not limited to misconduct resulting in a criminal conviction. Corvelli, 130 N.J. at 552. Rather, "[t]he term 'honorable service' . . . is sufficiently generic to

encompass a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction." Ibid.

Forfeiture of a public employee's pension is governed by the factors enumerated by our Supreme Court in Uricoli v. Police & Firemen's Retirement System, 91 N.J. 62, 77-78 (1982), and codified in N.J.S.A. 43:1-3(c):

> (1) the member's length of service; (2) the basis for retirement; (3) the extent to which the member's pension has vested; (4) the duties of the particular member; (5) the member's public employment history and record covered under the retirement system; (6) any other public employment or service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the member's public duties; (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the member which bear upon the justness of forfeiture [(statutory or Uricoli factors)].

Of particular relevance here, the Board may attribute more weight to factors seven, eight, and nine, when applicable. See Corvelli, 130 N.J. at 552-53 (holding total pension forfeiture "was justified by . . . application of Uricoli factors seven, eight, and nine").

A-2586-17T1

II.

Applying those legal standards to the present case, we turn to the pertinent facts and procedural history, which are largely undisputed. Lynch was hired by the Sussex County (County) Sheriff's Office (SCSO) as a corrections officer, and established membership in the PFRS in 1999. During the course of his employment, Lynch received several commendations and achievements. He was promoted to sergeant in 2008, and then to lieutenant in 2011.

In February 2015, however, the SCSO issued a Preliminary Notice of Disciplinary Action (PNDA) charging Lynch with violations of various administrative rules, including failure to perform his duties. The charges stemmed from an internal affairs investigation of an inmate's possession of a cell phone, contrary to the jail's regulations. As the commanding officer on duty, Lynch failed to ensure the inmate was properly searched when he was readmitted to the jail from a hospital. Lynch also failed to take appropriate action after receiving conflicting reports about the inmate's claim he had a catheter.

In April 2015, another internal affairs investigation revealed Lynch had purchased steroids for personal use from a corrections officer. Lynch apparently knew about the officer's use and distribution of illegal narcotics for more than

one year. Following a positive drug test, the SCSO issued a PNDA to Lynch charging him with various administrative violations, including failure to perform his duties, insubordination, and conduct unbecoming a public employee. Lynch was suspended without pay.

In June 2015, Lynch filed an application for ADRB regarding an assault that occurred five months earlier by an inmate who was a known prostitute. During the course of his attempt to restrain the inmate, she bit Lynch's hand, drawing blood. Lynch claimed he suffered from "a great deal of stress and anxiety" as a result, fearing he might have contracted a communicable disease from the inmate. The following month, Lynch filed an amended ADRB application, contending he sustained injuries during a previous assault in October 2014, and witnessed an assault of his officer in July 2013.

In August 2015, Lynch, the County, and the SCSO executed a settlement agreement. Among other things, the County and the SCSO agreed to withdraw the disciplinary charges. In exchange, Lynch agreed to irrevocably resign from the SCSO as of August 10, 2015, and to "be barred from future law enforcement employment in the State of New Jersey." The settlement agreement also acknowledged that Lynch "intend[ed] to apply for a disability pension."

On March 21, 2016, the Board reviewed the administrative charges filed against Lynch and determined his public service had been dishonorable. The Board issued an initial decision ordering a total forfeiture of Lynch's service and salary credit earned in his fifteen years and nine months of public employment. The Board also determined Lynch's application for ADRB was rendered "moot because his total service and salary credit [we]re forfeited." The Board denied petitioner's ensuing application for reconsideration but approved his request for a hearing, and the matter was transmitted to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ).

At the hearing, the Board presented the testimony of the SCSO Internal Affairs Investigator John Schanstra, who conducted both investigations, and Lynch testified in his own behalf. Notably, Lynch admitted he purchased steroids from the corrections officer on "two or three" occasions for a few months prior to March 2015. Contrary to his statement to Schanstra, Lynch claimed he "just became aware of [the officer's drug-dealing] role a couple of months before" the investigation commenced. Lynch said the January 2015 assault by the female inmate triggered his steroid use.

The ALJ also considered documentary evidence, including the internal affairs reports, the PNDAs, the settlement agreement, and Lynch's applications

for ADRB. Thereafter, the ALJ issued an initial decision, evaluating the statutory factors and ultimately modified the Board's decision.

Regarding the cell phone incident, the ALJ found "while Lynch's conduct may have been negligent, perhaps even grossly negligent or reckless . . . [his] conduct was not dishonorable or the type of conduct contemplated by the forfeiture statute." Although the ALJ acknowledged the disciplinary charges had been settled, she also "observed that the SCSO sought a forty-five day suspension." Thus, the ALJ reasoned "even if Lynch's conduct had been dishonorable, any forfeiture in excess of the penalty sought by the appointing authority would be excessive." Accordingly, the ALJ recommended no forfeiture for the cell phone incident.

Turning to the steroids incident, the ALJ found "there [wa]s no question of Lynch's guilt and culpability." The ALJ elaborated:

> [Lynch] admitted to knowing about [the officer's] illegal activity; he admitted to the purchase and use of illegal steroids, including one transaction in the parking garage of the Sussex County Jail; and he tested positive for illegal steroids. Lynch's stated reason for the use of illegal steroids was that it was a lapse in judgment as a result of the January 2015 assault, whereby he was humiliated and made to feel inferior in front of his staff. While that and the October 2014 assault may otherwise have been plausible reasons, it is noted that Lynch's knowledge of [the officer]'s illegal activity and his failure to take action predated both the January 2015

and October 2014 assaults. Further, by his own admission, Lynch did not report [the officer] because Lynch was using illegal steroids himself.

However, the ALJ concluded "Lynch's conduct was not so dishonorable as to require total forfeiture of all pension benefits." Rather, the ALJ recommended a partial forfeiture, commencing January 1, 2014, i.e., the date on which she deemed Lynch first became aware of the officer's drug distribution.

The Board issued a final decision dated January 9, 2018. Although the Board accepted the ALJ's factual findings, it rejected the ALJ's legal conclusions, finding her analysis of the statutory factors was incorrect. The Board then considered the statutory factors. Citing Corvelli, 130 N.J. at 552-53, the Board afforded "considerable weight" to statutory factors seven ("the nature of the misconduct"), eight ("the relationship between the misconduct and . . . Lynch's position as a [c]orrections [l]ieutenant"), and nine ("Lynch's motives").

Regarding the cell phone incident, the Board cited the testimony of Schanstra, emphasizing an inmate's possession of a cell phone is "a threat to the safety of the jail . . . it could be used to call others or take photographs or schematics of safety and security measures." Accordingly, the Board found Lynch's inactions "endangered the entire jail population." The Board thus

9

concluded, the "egregious nature" of this charge, alone, "warrant[ed] a total forfeiture."

Further, the Board determined Lynch's involvement with illegal steroids represented "serious and significant episodes of misconduct" and his failure to take any action against the officer, were both "directly related" to his job as a corrections lieutenant. Finding those "incidents reveal[ed] a complete dereliction of duty," the Board concluded total forfeiture was warranted.

Because Lynch could not return to work under the terms of his settlement agreement,[1] the Board also concluded Lynch did not leave work due to a disabling medical condition. Accordingly, the Board determined Lynch was not eligible for ADRB.

On appeal, Lynch raises the following points for our consideration:

POINT I

THE PFRS BOARD'S IMPOSITION OF TOTAL FORFEITURE OF LYNCH'S PENSION SERVICE WAS WHOLLY UNWARRANTED UNDER A FAIR AND BALANCED APPLICATION OF THE [ELEVEN-]FACTOR URICOLI TEST.

---

[1] See N.J.S.A. 43:16A-8(2) (requiring beneficiaries who retire on disability benefits to return to duty after their disability "has vanished or has materially diminished").

POINT II

THE BOARD IS BARRED FROM RAISING THE SEPARATION OF SERVICE RULE TO DISQUALIFY LYNCH BECAUSE THIS ISSUE WAS NOT RAISED BELOW AND IS IN ANY EVENT INAPPLICABLE BECAUSE N.J.A.C. 17:1-6.4 WAS NOT PROMULGATED UNTIL WELL AFTER THE DISCIPLINARY CHARGES WERE MADE AND THE SETTLEMENT WAS EXECUTED.

POINT III

THE BOARD IS NOT BARRED BY THE SETTLEMENT AGREEMENT BETWEEN LYNCH AND HIS EMPLOYER FROM ANY RETURN TO WORK ORDER.

Regarding Lynch's first point, we note at the outset that Lynch does not dispute the Board's findings regarding each statutory factor, nor does he cite any binding authority to support his argument. Rather, Lynch references his nearly sixteen years of service, claiming "[a]ll service rendered prior to January 1, 2014 was deemed untainted and honorable" by the ALJ. Conversely, the Board cites one of its prior decisions, "impos[ing] a total forfeiture of over [twenty] years of service credit on a correction officer who was convicted of conspiring to bring a cell phone into a prison." See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (recognizing a reviewing court should give "due regard also to the agency's expertise where such expertise is a pertinent factor").

A-2586-17T1

Having reviewed the record, we are convinced there is sufficient credible evidence in the record to support the Board's evaluation of the statutory factors and its decision that a total forfeiture of Lynch's public service and salary credit was warranted under the circumstances. See J.B., 229 N.J. at 43. The Board's decision was based on two separate incidents, both of which clearly constituted a breach of honorable public service. See N.J.S.A. 43:1-3(b). Those incidents, together, dispel Lynch's argument that he "acted impulsively in a moment of weakness and vulnerability." Rather, the record supports the Board's determination that, under the circumstances of both incidents, Lynch's service was dishonorable and related to his duties as a high-ranking lieutenant. See Masse, 87 N.J. at 263.

Turning to Lynch's remaining points, we agree that his separation from service was not raised by the Board in its initial decision and, as such, it was not considered by the ALJ. Nonetheless, because we find the Board's decision imposing a total forfeiture of Lynch's service and salary credit was warranted, his application for ADRB was rendered moot. Therefore, we need not consider the arguments raised in his remaining points.[2]

---

[2] Pursuant to Rule 2:6-11(d), the Board filed a supplemental letter brief, citing our recent decision in Cardinale v. Board of Trustees, Police & Firemen's

To the extent we have not specifically addressed Lynch's remaining arguments, we conclude they are without sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E). Pursuant to our "limited" standard of review, Russo, 206 N.J. at 27, we affirm substantially for the reasons expressed in the Board's final decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

Retirement System, 458 N.J. Super 260 (App. Div. 2019). In Cardinale, we determined a PFRS member's irrevocable resignation from employment "renders the individual ineligible for ordinary disability benefits." Id. at 262. As we stated, however, the Board's initial decision does not mention Lynch's inability to return to work.

A-2586-17T1