**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3741-18T2

ERIC J. REAMY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Submitted March 2, 2020 – Decided March 18, 2020
>
> Before Judges Sumners and Geiger.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-60913.
>
> Malcolm Blum, attorney for appellant.
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Alison Keating, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Eric J. Reamy appeals from a final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) ordering the total forfeiture of his PFRS pension service credit due to misconduct. We affirm.

I.

The following facts are essentially undisputed. Reamy began his employment with the Glen Rock Police Department (GRPD) in 1988 as a patrolman. He was subsequently promoted to detective and detective sergeant.

From March 2011 through August 2015, Reamy wrongfully and without authorization sold four rifles and three handguns that he improperly removed from the GRPD's evidence locker.

In 2015, Reamy was the juvenile officer for the GRPD. He began sexting on his work cellphone with two juvenile females, R.K., who was then seventeen and H.G., who was then fourteen, that he met through police work. Reamy sent photographs of his exposed penis to H.G. and solicited naked photographs from her in return. In response, H.G. sent partially naked photographs of her breasts and crotch area to Reamy. He also sent sexually explicit text messages to both children, including that he would try to "f**k [H.G.]" if they "were closer in age."

A-3741-18T2

Following an investigation, Reamy was charged and pled guilty to third-degree theft by failure to make required disposition of property received, N.J.S.A. 2C:20-9, and second-degree endangering the welfare of a minor by a caretaker by engaging in sexual conduct which would impair or debauch the moral of a child, N.J.S.A. 2C:24-4(a)(1). An evaluation at the Adult Diagnostic Treatment Center determined that his offense "appears to be an anomaly" and he was not eligible for sentencing under the purview of the New Jersey Sex Offender Act, N.J.S.A. 2C:47-1 to -10, because there was no "clear finding of compulsive sexual behavior."

During the sentencing hearing, the judge noted Reamy "took advantage of a position of trust or confidence to commit the offense." He was sentenced to concurrent three-year prison terms. Reamy was also ordered to comply with Megan's Law, N.J.S.A. 2C:7-1 to -23, placed on parole supervision for life, N.J.S.A. 2C:43-6.4, and ordered to pay restitution of $2530 to H.G. The judgment of conviction also states that Reamy "agrees to forfeit present and future public employment." Reamy did not appeal his conviction or sentence. He was paroled after serving one year.

As a result of his conduct and conviction, Reamy was terminated from employment and agreed to a September 30, 2016 consent judgment that: (1)

forfeited his employment by the Borough of Glen Rock and the GRPD, pursuant to N.J.S.A. 2C:51-2(a)(1), (2); and (2) "forever disqualified him from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions," pursuant to N.J.S.A. 2C:51-2(d).

After his release from prison, Reamy applied for a special retirement. On February 12, 2018, the Board denied Reamy's application. After considering the record and applying the eleven factors set forth in N.J.S.A. 43:1-3, "the Board determined that Mr. Reamy's criminal misconduct was directly related to his public employment and demonstrates a high degree of moral turpitude." The Board found that

> Mr. Reamy was only able to commit these crimes by virtue of his position as a police officer. He had contact information for the juveniles because he was a juvenile officer and oversaw their cases. In regard to the theft of weapons in evidence, not only was Mr. Reamy a police officer, he was the evidence officer. He stole evidence and sold it for personal profit.

The Board further determined that a total forfeiture of all service and salary credits in Reamy's PFRS account was warranted "due to the egregious nature of his crimes and the direct relationship to his position."

Reamy appealed the total forfeiture. The matter was transferred to the Office of Administrative Law as a contested case and assigned to an

Administrative Law Judge (ALJ) for hearing. A two-day hearing was conducted in October 2018. The ALJ issued his initial decision on January 10, 2019.

Reamy testified that his life dramatically changed for the worse in December 2007, when he was diagnosed with stage two colon cancer. He underwent surgery followed by six months of chemotherapy. He claimed the surgery and treatment caused him to experience erectile dysfunction and other problems, including neuropathy, tinnitus, and inability to focus and concentrate.

A counselor diagnosed Reamy with attention deficit disorder (ADD), for which he was prescribed Adderall. He claims this caused him to experience "hypersexuality" and led to him using his work cellphone to engage in sexual communications with several women and sexting with R.K. and H.G.

Reamy also claims he suffers from post-traumatic stress disorder (PTSD) because of his prison experience. He works part-time and earns less than $400 per month. Financial difficulties led to the sale of his home.

The ALJ found Reamy's "crimes[] were based only incidentally on his police work." He noted the unblemished nature of Reamy's first twenty-three years of employment. The ALJ recommended a partial forfeiture of pension benefits of fifty-two months, reflecting the time period between March 4, 2011 and June 30, 2015. This represented the time from Reamy's first offense until

his last day of work. The Attorney General filed exceptions to the ALJ's initial decision.

On March 11, 2019, the Board adopted the ALJ's findings of fact but rejected his legal conclusion and ordered a total forfeiture of Reamy's pension benefits. The Board considered the eleven factors adopted by the Court in Uricoli v. Board of Trustees, Police and Firemen's Retirement System, 91 N.J. 62 (1982), and concluded that "[t]he Uricoli factors, particularly seven, eight, and nine, justif[ied] the imposition of a total forfeiture."

Regarding factor seven, the Board found "Reamy had multiple instances of dishonorable conduct, reflecting two discrete crimes, the first stealing weapons, and the second grooming two underage children under his care and exchanging sexually explicit messages with them." The Board found Reamy's conduct towards H.G. "was particularly egregious."

Regarding factor eight, the Board found "the conduct that Reamy pled guilty [to] was directly related to his workplace duties. He used his position with the police department to steal the weapons, and he used his position as a juvenile officer to begin communicating with the two children after he met them through his job."

6

Regarding factor nine, the Board found "Reamy sought personal sexual gratification from minors, susceptible individuals he was entrusted to protect. This was particularly egregious because he supervised the juvenile bureau for his department. Reamy additionally sought personal financial gain from selling dangerous weapons, without regard for the consequences." The Board concluded that "Reamy's actions display a high level of moral turpitude as his actions touch public safety and the safety of children."

This appeal followed. Reamy contends the applicable facts and law warrant a determination that he should receive his pension benefits.

## II.

The scope of our review in an appeal from a final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). In light of the deference applied to such determinations, when an appellate court reviews administrative sanctions, "the test . . . is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of

fairness.'" Herrmann, 192 N.J. at 28-29 (alteration in original) (quoting In re Polk, 90 N.J. 550, 578 (1982)). If this test is not met the sanction will not be affirmed.

We are not, however, "bound by an agency's interpretation of a statute or its determination of a strictly legal issue." Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We undertake de novo review of an agency's interpretation of a statute or case law. Ibid. (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

A.

A public employee must provide "honorable service" to receive pension or retirement benefits. N.J.S.A. 43:1-3(a) ("The receipt of a public pension or retirement benefit is . . . expressly conditioned upon the rendering of honorable service by a public officer or employee."); N.J.A.C. 17:1-6.1(a); see also Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) (noting all of New Jersey's public pension statutes have an implied requirement of honorable service, and forfeiture can be ordered for employees who violate that requirement). The Board is authorized to order forfeiture, in whole or in part, "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable." N.J.S.A. 43:1-3(b);

N.J.A.C. 17:1-6.1(a), (c). Ordinarily, to require forfeiture of that portion of a member's pension that accrued prior to the criminal activity, the Board must find that the misconduct was related to the member's service. Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252, 262-63 (1981). However, the "conviction of a crime involving moral turpitude related to the employment taints all the past service." Id. at 257. Thus, total forfeiture may be warranted when there is "a nexus between the dishonorable conduct and the public employment." Ibid.

The forfeiture of a public employee's pension is governed by the factors enumerated in Uricoli, 91 N.J. at 77-78, and subsequently codified in N.J.S.A. 43:1-3(c).[1] The eleven factors are:

> (1) the member's length of service; (2) the basis for retirement; (3) the extent to which the member's pension has vested; (4) the duties of the particular member; (5) the member's public employment history and record covered under the retirement system; (6) any other public employment or service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the member's public duties; (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and

---

[1] Reamy was not subject to mandatory pension forfeiture under N.J.S.A. 43:1-3.1(a) because the State did not contend the value of the stolen firearms exceeded $10,000, see N.J.S.A. 43:1-3.1(b)(4), and conviction of violating N.J.S.A. 2C:24-4(a)(1) is not an enumerated offense, see N.J.S.A. 43:1-3.1(b).

similar considerations; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

[N.J.S.A. 43:1-3(c).]

The factors "must be balanced and then weighed in terms of the goals to be achieved under the pension laws." Uricoli, 91 N.J. at 78. The Board may, however, attribute more weight to factors seven, eight, and nine, when applicable. Corvelli, 130 N.J. at 552-53 (holding total pension forfeiture "was justified . . . by application of Uricoli factors seven, eight, and nine").

## B.

Reamy was convicted of second-degree endangering the welfare of a minor by a caretaker and third-degree theft by improper disposition. Indeed, Reamy, who pleaded guilty, does not deny committing both crimes.

Law enforcement officers are held to a higher standard of conduct than other public employees and are obliged to act in a reasonable manner. In re Phillips, 117 N.J. 567, 576-77 (1990). Law enforcement officers "must present an image of personal integrity and dependability in order to have the respect of the public." Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). "Every police officer has an inherent duty to obey the law." State v. Stevens, 203 N.J. Super. 59, 65 (Law Div. 1984). Further, they must serve

with "good faith, honesty, and integrity." Id. at 66 (quoting Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-76 (1952)). This higher standard of conduct applies to the behavior of law enforcement officers whether on or off-duty. Phillips, 117 N.J. at 577.

Despite his prior blemish-free years as a GRPD officer, Reamy was terminated from employment, pleaded guilty to two serious crimes, and sentenced to prison followed by registration under Megan's Law and parole supervision for life. By any measure, his misconduct was egregious.

Reamy's misconduct was directly related to his employment as a GRPD officer. He stole firearms that were stored in an evidence locker while he was the evidence officer for the department. He used his work cellphone to engage in a course of sexting with underage girls involved in juvenile cases he was overseeing as the department's juvenile officer. He did so while on duty.

Reamy's misconduct involved multiple incidents of two types of criminal behavior that stretched over several years. Reamy sold the firearms he stole on at least four occasions between March 2011 and August 2015. The sexting involved two minor victims and occurred over the course of three and one-half months in 2015.

The "primary duty" of police officers "is to enforce and uphold the law." Id. at 576 (quoting Armstrong, 89 N.J. Super. at 566). Reamy's conduct violated his oath of office, undermined his ability to perform his duties, and tarnished the reputation of the entire department. The victims of his sexting were children that Reamy was sworn to protect.

The ALJ's findings, which were adopted by the Board, are supported by sufficient credible evidence in the record. The Board considered the Uricoli factors and appropriately gave more weight to factors seven, eight, and nine. It concluded total pension forfeiture was justified.

Given our deferential standard of review and the serious nature of petitioner's repeated misconduct that involved moral turpitude directly related to his employment, we have little difficulty in upholding the Board's decision to totally forfeit his PFRS retirement benefits. The decision is supported by substantial evidence in the record and is neither arbitrary, capricious, nor unreasonable. Total forfeiture is not disproportionate to the offenses or shocking to one's sense of fairness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3741-18T2