NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5589-16T3

LEWIS STEIN,

       Petitioner-Appellant,

v.

DEPARTMENT OF LAW & PUBLIC
SAFETY, NEW JERSEY RACING
COMMISSION,

       Respondent-Respondent.

_____

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**February 6, 2019**

**APPELLATE DIVISION**

</div>

Argued January 23, 2019 – Decided February 6, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from the Department of Law & Public Safety, New Jersey Racing Commission.

Lewis Stein, appellant, argued the cause pro se.

George N. Cohen, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; George N. Cohen, on the brief).

Michael Vukcevich, Director of Legal Affairs, attorney for amicus curiae Darby Development, LLC.

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Lewis Stein appeals from a final decision of the New Jersey Racing Commission (Commission), which denied his petition for the adoption of an administrative rule allowing New Jersey residents to place wagers with New Jersey's Account Wagering System (AWS) while physically located outside the State. He argues that the Off-Track and Account Wagering Act (the OTAWA or the Act), N.J.S.A. 5:5-127 to -160, does not preclude such wagering. We disagree and affirm.

I.

In 1998, the New Jersey voters approved an amendment to the New Jersey Constitution, which authorized the Legislature to enact "by law, the specific kind, restrictions and control of wagering on the results of live or simulcast running and harness horse races conducted within or outside of this State." N.J. Const., art. IV, § 7, ¶ 2. Thereafter, the Legislature enacted the OTAWA. See N.J.S.A. 5:5-127 to -160.

The OTAWA authorizes the Commission to issue licenses to the New Jersey Sports and Exposition Authority (Authority) to permit off-track wagering at licensed off-track facilities. N.J.S.A. 5:5-130(a). "Off-track wagering," is defined in the Act, as "pari[-]mutuel wagering at an off-track

wagering facility as authorized under this act." N.J.S.A. 5:5-129. "Off-track simulcasting" is "the simultaneous audio or visual transmission of horse races conducted at in-State and out-of-State racetracks to off-track wagering facilities and pari[-]mutuel wagering at those off-track wagering facilities on the results of those races." Ibid.

The OTAWA also authorized the Commission to issue a license to the Authority to establish an AWS. N.J.S.A. 5:5-139(a). The Authority is defined in the Act as the "account wagering licensee." N.J.S.A. 5:5-129. The Act states that "account wagering" is "a form of pari[-]mutuel wagering in which an account holder may deposit money in an account with the account wagering licensee and then use the account balance to pay for pari[-]mutuel wagers by the account holder." Ibid. The AWS is "the system through which account wagers are processed." Ibid.

The OTAWA permits New Jersey residents who are at least eighteen years old to establish wagering accounts with the AWS. N.J.S.A. 5:5-142(a). The Act also allows account holders to place wagers with the AWS without having to be physically present at a New Jersey racetrack or New Jersey off-track wagering facility. See N.J.S.A. 5:5-144(e). The account holder may place wagers in person, by telephone, or through other electronic media such as the internet. Ibid.

Lewis is a New Jersey resident who has established a wagering account with the AWS. It appears that while on vacation in Massachusetts, Lewis attempted to place a wager through his AWS account, but he was not permitted to do so because he was not at that time physically located in New Jersey. On August 18, 2016, Lewis wrote to the Commission and asserted that the Act does not preclude him from placing account wagers through the AWS from outside the State. He requested that the Commission cease enforcing this restriction on account wagering.

On August 31, 2016, Frank Zanzuccki, the Executive Director of the Commission, responded to Lewis's letter. He explained that "[a]lthough the Act does not specifically prohibit New Jersey account holders from placing wagers while they are outside New Jersey . . . the [L]egislative intent was to create an intrastate wagering system." Zanzuccki noted that since the inception of account wagering in New Jersey, the Commission had "routinely imposed" a condition on the Authority's account wagering license, which precludes the Authority from "knowingly accept[ing] any wager from a New Jersey resident account holder, where that account holder seeks to place such wager while at a physical location outside New Jersey."

In his letter, Zanzuccki also stated that in November 2015, the Commission became aware of the availability of new technology that allows

the Authority to identify the geographical source of an account wager. Thereafter, the Commission imposed an additional condition on the Authority's account wagering license, which requires the installation of "advanced geo-location software and controls" in the AWS. Zanzuccki wrote that the purpose of the software was to "ensure that only intrastate wagers are accepted by the account wagering licensee consistent with the requirements of the Act."

On February 23, 2017, Lewis filed a petition with the Commission for rulemaking pursuant to N.J.S.A. 52:14B-4(f). As noted, Lewis sought the adoption of a rule permitting AWS account holders to place wagers with the AWS while temporarily located outside the State. In the alternative, Lewis asked the Commission to "declare" that is permissible for New Jersey resident AWS account holders to open wagering accounts with account-wagering systems operated in other states or nationally, for use while the account holder is located outside of New Jersey.

At its April 21, 2017 meeting, the Commissioner referred the matter for further deliberations for an additional period, not to exceed ninety days. See 49 N.J.R. 1261(a) (May 15, 2017). On May 15, 2017, the Commission published notice of the petition in the New Jersey Register. See ibid.

By letter dated July 14, 2017, Michael Vukcevich, Director of Regulatory Affairs for Darby Development, LLC (Darby), commented on

Stein's petition. He noted that Darby "manages the business affairs of the [AWS], and also serves as management agent [for] the New Jersey Thoroughbred Horsemen's Association, Inc." in its racing-related interests. Vukcevich also noted that in December 2016, the Commission had authorized the continuation of account wagering in 2017, but "as in prior years imposed a prohibition against the accept[ance] of account wagers from resident account holders while outside New Jersey."

Vukcevich stated that Darby "continue[d] to maintain that this restriction makes no sense legally or practically, and should be revisited as it [has a negative impact upon] the business interests of the [AWS] and interested industry participants." According to Vukcevich, because of the restriction, many "of our patrons . . . establish[] permanent wagering accounts, through out-of-state operators," and this "provides no benefit to our racing industry." He stated that this has resulted in the loss of customers and revenues "which would otherwise inure to the benefit of" the State.

On July 18, 2017, John Hindman, Senior Vice President and General Counsel of ODS Technologies, L.P., d/b/a TVG Network (TVG) wrote to the Commission and joined in Darby's comments. Hindman stated that TVG provides the AWS with account wagering services. He asserted that the restriction on out-of-state access to the AWS causes customer frustration, and

has resulted in significant business losses for the system. Hindman stated that TVG is concerned that the "restriction unduly hinders New Jersey racing interests from providing customers with a competitive product and customer experience."

At its meeting on July 19, 2017, the Commission considered Stein's petition. Zanzuccki stated that the Commission had received legal advice in executive session and, based on that advice, the petition should be denied. He asserted that adoption of the proposed rule "would be inconsistent with existing law[,] which requires" that the AWS "be an intra-state system only."

Stein then addressed the Commission. He said no provision in the Act prohibits account holders from placing wagers with the AWS while located outside the State. Zanzuccki responded by stating that the Commission was required to comply with the law, "as we know it and understand it." Vukcevich also addressed the Commission. He said the Commission should proceed with the rule-making process, since that would allow members of the public and the racing industry to comment on the restriction.

The Commission voted to deny the petition. By letter dated July 24, 2017, Zanzuccki informed Stein that the Commission had denied his petition "based upon legal advice." Thereafter, the Commission published notice of its action in the New Jersey Register. See 49 N.J.R. 2817(a) (Aug. 21, 2017).

This appeal followed. We thereafter granted Darby's motion for permission to appear as amicus curiae.

## II.

On appeal, Stein argues that the Commission erred by denying his petition. He contends the Commission has the authority under the OTAWA to adopt a rule allowing account holders to place wagers with the AWS while the account holders are located out of State.

We note initially that appellate review of a final decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). An agency's final decision will be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"In determining whether [an] agency['s] action is arbitrary, capricious, or unreasonable," we consider:

> (1) whether the agency's action violates express or implied legislative policies . . .; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

When considering these criteria, the court must give "substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. at 28 (citing In re License Issued to Zahl, 186 N.J. 341, 353 (2006); Brady v. Bd. of Review, 152 N.J. 197, 210 (1997); Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We are not bound, however, "by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Lavezzi v. State, 219 N.J. 163, 172 (2014) (alteration in original) (quoting Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 165 (2013)). We review an agency's legal conclusions de novo. Ibid.

It is well-established that the court's role in interpreting a statute is to ascertain the intent of the Legislature, and the best indicator of legislative intent is the language of the statute. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). We must give the statutory language its "ordinary meaning and significance." Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). "If the [statute's] plain language leads to a clear and unambiguous result, then [the] interpretative process is over." Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

As noted, Stein argues that the OTAWA does not expressly prohibit account holders from placing wagers with the AWS from locations outside of New Jersey. We disagree. The Act provides, "[a] person shall not place an account wager <u>from within this State</u> except in accordance with this act through the account wagering licensee, and no entity, other than the account wagering licensee, shall accept an account wager <u>from a person within this State</u>." N.J.S.A. 5:5-142(a) (emphasis added). The Act further provides that "[a]ll persons accepting account wagers on behalf of the account wagering licensee shall do so at a location <u>within this State</u>." N.J.S.A. 5:5-142(l) (emphasis added).

We are convinced that these statutory provisions make clear the Legislature intended to limit the placement and acceptance of account wagers from account holders who are "within this State." The repeated use of the phrase "within this State" in N.J.S.A. 5:5-142(a) and (l) shows that the Legislature intended to establish an account wagering system, conducted within this State, by New Jersey resident account holders who are physically present here. The Commission correctly determined that the Legislature intended the AWS to be an "intra-state" system of wagering.

Furthermore, as Zanzuccki explained in his letter to Stein dated August 31, 2016, the Commission has followed this interpretation of the Act

10                                                          A-5589-16T3

consistently since the establishment of the AWS. An agency's interpretation of a statute is not binding on the court, but it is entitled to "substantial deference" where, as here, "the Legislature has entrusted the agency with" responsibility for the statute's enforcement. See Miah v. Ahmed, 179 N.J. 511, 524 (2004) (citing Matturri v. Bd. of Trs. of the Judicial Ret. Sys., 173 N.J. 368, 381 (2002)).

Darby argues, however, that other provisions of the Act indicate that the Legislature never intended to bar New Jersey resident account holders from placing wagers with the AWS while physically located outside the State. In support of this argument, Darby cites N.J.S.A. 5:5-144, which states that an "account wagering licensee may accept account wagers only from" New Jersey residents and "only" in the following manner:

> a. The account wager shall be placed directly with the account wagering licensee by the holder of the wagering account.
>
> b. The account holder placing the account wager shall provide the licensee with the correct personal identification number of the holder of the wagering account.
>
> c. A licensee may not accept an account wager, or series of wagers, in an amount in excess of funds on deposit in the wagering account of the holder placing the wager. . . .
>
> d. Only the holder of the wagering account shall place an account wager. Unless otherwise approved by the

[C]omission, no person, corporation or other entity shall directly or indirectly act as an intermediary, transmitter or agent in the placing of wagers for a holder of a wagering account; provided, however, that the use of credit or debit cards specifically approved by the licensee or the use of checks, money orders or negotiable orders of withdrawal or the use of telephonic, computer or electronic means by the account holder to place such wagers shall not be prohibited.

The conditions in N.J.S.A. 5:5-144 are, however, not the only conditions established for the placement of account wagers with the AWS. As we have explained, N.J.S.A. 5:5-142(a) provides that account holders may only place wagers "from within this State." Moreover, N.J.S.A. 5:5-142 requires account holders to be New Jersey residents, who are at least eighteen years old, and establishes other conditions for the establishment of wagering accounts.

Darby also cites N.J.S.A. 5:5-142(k), which states: "For the purposes of this act and notwithstanding any other law to the contrary, all messages or orders to place account wagers received by the licensee on behalf of a participating permit holder shall be deemed made to a place within this State." Darby interprets this statute to mean that any account wager placed by an account holder while located outside New Jersey will be deemed to have been "made to a place within this State."

The statute does not, however, refer to wagers by account holders. It refers to "wagers received by the licensee on behalf of a participating permit

12

holder." See ibid. As noted previously, under the OTAWA, the licensee is the Authority. N.J.S.A. 5:5-129. In addition, the Act defines the term "permit holder" as "the holder of an annual permit to conduct a horse race meeting issued by the [C]ommission." Ibid. Therefore, N.J.S.A. 5:5-142(k) applies to a limited category of wagers, and cannot be interpreted as a declaration that all wagers placed by account holders while located outside New Jersey are deemed to have been "made to a place within this State."

In responding to Stein's appeal, the Attorney General also notes that the OTAWA should be interpreted in accordance with relevant provisions of federal law, including the Interstate Horseracing Act of 1978 (IHA), 15 U.S.C. §§ 3001 to 3007. The IHA was enacted "to regulate interstate commerce with respect to wagering on horseracing, in order to further the horseracing and legal off-track betting industries in the United States." 15 U.S.C. § 3001(b). Among other things, the IHA provides that the states "have the primary responsibility for determining what forms of gambling may legally take place within their borders." 15 U.S.C. § 3001(a)(1).

The IHA also provides that: "in the limited area of interstate off-track wagering on horseraces, there is a need for Federal action to ensure states will continue to cooperate with one another in the acceptance of legal interstate

13

wagers." 15 U.S.C. § 3001(a)(3). The IHA defines an "interstate off-track wager" as

> a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes pari-mutuel wagers, where lawful in each State involved, placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, as well as the combination of any pari-mutuel wagering pools[.]
>
> [15 U.S.C. § 3002(3).]

Thus, under the IHA, a legal wager may be placed in one state via telephone or other electronic media, and accepted by the off-track betting system in another state if the wagering is "lawful in each [s]tate involved," see ibid., and the consent required under 15 U.S.C. § 3004 is obtained.

The IHA therefore allows New Jersey to authorize account holders to place wagers with the AWS while physically located outside New Jersey if the state where the wager is placed permits such wagering. However, in the OTAWA, the Legislature chose to establish an intra-state account wagering system, which is available only to qualifying New Jersey residents when they are physically located in this State.

By doing so, the Legislature relieved the Authority of the responsibility for determining whether an account holder is placing the wager from a state where such wagering is legal. In view of the number of states from which

A-5589-16T3

such wagers could be placed, the Legislature's decision to establish an intra-state system of account wagering was reasonable.

As noted previously, in his petition, Stein asked the Commission to declare that it is the policy of this State that New Jersey residents may open wagering accounts with account-wagering systems in other states or nationally, which the account holders can use while located outside of New Jersey. The Commission did not expressly discuss this request, and on appeal Stein has not presented any arguments specifically addressing this issue. Suffice it to say, however, there is no provision in the OTAWA which supports the declaration of such a policy.

We accordingly conclude that the Commission did not err by denying Stein's petition for rulemaking. The Commission's determination that New Jersey's AWS is an intra-state system, available only for wagering by New Jersey residents while located within this State, is consistent the relevant provisions of the OTAWA. The Commission's decision is not arbitrary, capricious, or unreasonable.

### III.

Stein further argues that if the OTAWA is interpreted to preclude account holders from placing wagers with the AWS while located outside of

New Jersey, the Act violates the Commerce Clause of the United States Constitution. Again, we disagree.

"It has long been accepted that the Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also directly limits the power of the States to discriminate against interstate commerce." New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988) (citing Hughes v. Oklahoma, 441 U.S. 322, 326 (1979); H. P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 534-35 (1949); Welton v. Missouri, 91 U.S. 275 (1876)). "This 'negative' aspect of the Commerce Clause prohibits economic protectionism–that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Id. at 273-74 (citing Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 270-73 (1984); H. P. Hood & Sons, 336 U.S. at 532-33; Guy v. Baltimore, 100 U.S. 434, 443 (1880)).

"[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Granholm v. Heald, 544 U.S. 460, 472 (2005) (quoting Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or., 511 U.S. 93, 99 (1994)). However, "[w]here [a] statute regulates evenhandedly to effectuate a legitimate local public interest,

and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978) (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)). "The crucial inquiry, therefore, must be directed to determining whether [the statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." Ibid.

Applying these principles, we conclude that the OTAWA does not violate the Commerce Clause. The OTAWA neither regulates nor attempts to regulate off-track betting systems operated by other states or similar nationwide wagering websites. Rather, the OTAWA regulates the AWS and off-track wagers placed by New Jersey residents with New Jersey's account wagering system.

The OTAWA is not a protectionist measure, and it is directed solely to legitimate local concerns. If the OTAWA has an effect on interstate commerce, it is incidental and the resulting burden is not "clearly excessive" when considered in light of the benefits of establishing an AWS that is available to New Jersey residents for wagering while they are located in this State.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5589-16T3