**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5313-17T3

JAMES MCLEAN,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued October 17, 2019 – Decided October 25, 2019

Before Judges Haas and Enright.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-053180.

Samuel Michael Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel Michael Gaylord, on the brief).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Robert S. Garrison, Jr.,
Deputy Attorney General, on the brief).

PER CURIAM

Petitioner James McLean appeals from a June 12, 2018 final agency decision of respondent Board of Trustees (Board) of the Police and Fireman's Retirement System (PFRS). The Board adopted, with minor modifications, the decision of an Administrative Law Judge (ALJ) affirming the Board's decision to invoke a four percent forfeiture of McLean's special retirement benefit. We affirm.

We begin our review with a discussion of the governing legal principles to give context to the Board's decision, recognizing "[o]ur review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we will not overturn an agency decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)). Nor will we overturn an agency decision merely because we would have come to a

different conclusion.  In re Stallworth, 208 N.J. 182, 194 (2011).  We are not, however, bound by the "agency's interpretation of a statute or its determination of a strictly legal issue."  Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007).

A public employee must provide "honorable service" to receive pension or retirement benefits.  N.J.S.A. 43:1-3(a); N.J.A.C. 17:1-6.1(a); see Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) (noting all of New Jersey's public pension statutes have an implied requirement of honorable service, and forfeiture can be ordered for employees who violate that requirement).  The Board is authorized to order forfeiture, in whole or in part, "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable."  N.J.S.A. 43:1-3(b); N.J.A.C. 17:1-6.1(a), (c).  Ordinarily, to require forfeiture of the portion of a member's pension that accrued prior to the criminal activity, the Board must find that the misconduct was related to the member's service.  Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252, 263 (1981).  Nevertheless, forfeiture is not limited to misconduct resulting in a criminal conviction.  Corvelli, 130 N.J. at 552.  Rather, "[t]he term 'honorable service' . . . is sufficiently generic to encompass

A-5313-17T3

a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction." Ibid.

Forfeiture of a public employee's pension is governed by the factors enumerated by our Supreme Court in Uricoli v. Police & Firemen's Retirement System, 91 N.J. 62, 77-78 (1982), and codified in N.J.S.A. 43:1-3(c):

> (1) the member's length of service; (2) the basis for retirement; (3) the extent to which the member's pension has vested; (4) the duties of the particular member; (5) the member's public employment history and record covered under the retirement system; (6) any other public employment or service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the member's public duties; (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

Of particular relevance here, the Board may attribute more weight to factors (7), (8), and (9), when applicable. See Corvelli, 130 N.J. at 552-53 (holding total pension forfeiture "was justified by . . . application of Uricoli factors [(7), (8), and (9)]").

Applying those legal standards to the present case, we turn to the pertinent legal facts and procedural history, which are largely undisputed. McLean was

4

hired by the New Jersey Department of Corrections (DOC) as a corrections officer on April 22, 1989. On November 20, 2013, McLean was playing pool at the Perth Amboy Moose Lodge, while wearing an old set of DOC uniform pants. There, he and another patron, whom McLean had known for forty years, engaged in a verbal altercation. During their heated exchange, McLean pushed this patron. This individual then responded by coming toward McLean with a raised bar stool, so McLean punched him in the face with a closed fist, fracturing his orbital bone. Police arrived at the lodge in response to the incident, and when they approached McLean, he did not identify himself as a corrections officer. Police reports later identified McLean as the aggressor in the altercation and referred to video surveillance of the altercation.

The next day, McLean was informed by his supervising officer that the Perth Amboy Police Department had issued a warrant for his arrest. McLean turned himself in to the police department and was charged with one count of aggravated assault in the second degree, N.J.S.A. 2C:12-1(b)(1). He was charged administratively and, on November 25, 2013, he was suspended without pay. McLean's pension contributions were remitted through November 30, 2013.

On August 6, 2014, McLean was permitted enrollment into the Pre-Trial Intervention Program (PTI). As a condition of PTI, McLean entered into a consent judgment in which he agreed to forfeit his employment with the DOC and any future position or employment in law enforcement in New Jersey. As such, his employment with the DOC terminated on August 6, 2014.

McLean filed an application for special retirement on August 25, 2014, at which time he had twenty-five years of PFRS service credit. In 2015, the Board agreed to postpone action on McLean's request for special retirement. Also, in 2015, McLean's criminal charges were dismissed as a result of his successful completion of PTI. Then, in October 2016, McLean appeared before the Board, requesting that he be allowed to receive his honorable service pension.

The Board reviewed the administrative charges filed against McLean and determined his last year of public service had been dishonorable. It emphasized that McLean's misconduct demonstrated a high degree of moral turpitude and concluded there was a direct relationship between his charges and his duties as a senior corrections officer. Based on this, the Board invoked a four percent reduction in McLean's special retirement benefit. The Board's rationale for the four percent reduction was that McLean had one dishonorable year of his

6

twenty-five years of service and the incident occurred during McLean's final year of service.

In reaching its decision, the Board considered and balanced the Uricoli factors. The Board noted that although McLean was off-duty at the time of the assault in 2013, he was in uniform. McLean appealed, and the matter was transferred to the Office of Administrative Law for a hearing to determine whether the four percent forfeiture was justified. The ALJ affirmed the partial forfeiture decision of the Board on April 12, 2018. In doing so, the ALJ reviewed each of the Uricoli factors. The ALJ concluded factors (1), (5), (8), (9), and (10) weighed in favor of McLean, whereas factors (2), (3), (4), (6), and (11) had no positive or negative impact, and factor (7), the gravity or substantiality of the offense, weighed heavily against McLean.

Essentially, the ALJ did not agree with the Board's determination that McLean's behavior demonstrated a high degree of moral turpitude or that there was a strong relationship between the misconduct and McLean's employment. Rather, the ALJ found that McLean's misconduct resulted in bodily harm to another individual and "the seriousness of the misconduct weigh[ed] heavily against [McLean]." Consistent with Corvelli, 130 N.J. at 552, the ALJ reasoned that even though McLean's misconduct arose from a single offense that did not

result in a criminal conviction because of McLean's successful completion of PTI, McLean still bore responsibility for his underlying actions.

The matter was returned to the Board in 2018, whereupon the Board adopted the ALJ's decision, modifying it only to reverse the ALJ's exclusion of surveillance video from the incident. McLean appeals from the Board's June 12, 2018 decision.

On appeal, McLean argues the ALJ erred by finding the seriousness of McLean's misconduct weighed against him. He insists the ALJ misinterpreted the Board's initial decision and that the ALJ misinterpreted the law. In support of his proposition that the four percent forfeiture is "well beyond reasonable and is a clear abuse of the Board's discretion," McLean references his nearly twenty-five years of honorable service, claiming he had "no prior discipline charges for fighting or any other altercation." McLean cites to Masse, 87 N.J. 252; Procaccino v. State, Dep't of Treasury, 87 N.J. 265 (1981); and T.J.M. v. Bd. of Trs. of PFRS, 218 N.J. Super. 274 (App. Div. 1987) in support of his arguments. These cases are distinguishable, however, as they involve complete pension forfeitures. See T.J.M., 218 N.J. Super. at 284 (reversed and remanded for further findings as to what portion of the employee's pension may be withheld); cf. Masse, 87 N.J. at 253 (involving a total forfeiture from the employee's first

day of employment until the date of the incident, but permitting allowance of service thereafter).

Having reviewed this matter, we are convinced there is sufficient credible evidence in the record to support the Board's evaluation of the statutory factors and its decision that a four percent forfeiture of McLean's special retirement benefit was warranted under the circumstances. See J.B., 229 N.J. at 43. The Board's decision stems from an incident of assault where McLean was deemed to be the aggressor. Such misconduct clearly constituted a breach of honorable public service. See N.J.S.A. 43:1-3(b). The serious nature of the incident dispels McLean's argument that the Board abused its discretion by focusing on "the assault rather than focusing on the isolated nature or reason for the hit." Ultimately, the record supports the Board's determination that McLean's service in 2013 was dishonorable, that his misbehavior related to his duties because he was wearing uniform pants, and that he caused serious bodily injury. See Masse, 87 N.J. at 263.

Pursuant to our "limited" standard of review, Russo, 206 N.J. at 27, we affirm substantially for the reasons expressed in the Board's final decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). To the extent we have not specifically addressed McLean's

remaining arguments, we conclude they are without sufficient merit to warrant discussion in our written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5313-17T3