**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0824-18T4

MARCO SEMINARIO,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Submitted February 5, 2020 – Decided February 26, 2020
>
> Before Judges Haas and Enright.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-85943.
>
> Craig Scott Gumpel, attorney for appellant.
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Robert E. Kelly, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Marco Seminario appeals from a September 11, 2018 final agency decision of respondent Board of Trustees (Board) of the Police and Fireman's Retirement System (PFRS). The Board adopted, with modification, the decision of an Administrative Law Judge (ALJ) affirming the Board's decision to invoke a three-year forfeiture of appellant's retirement benefit. We affirm.

The pertinent facts of this case are undisputed. Appellant became a corrections officer for the Hudson County Department of Corrections in January 1993. He suffered three work-related injuries, including a hand injury on November 29, 2012. He was out of work on December 8, 2012, when he was involved in a motor vehicle accident after consuming prescription medication and alcohol. Appellant was charged and pled guilty to driving while intoxicated (DWI), in violation of N.J.S.A. 39:4-50.

The record reflects that during the DWI incident, when the arresting officer returned to his police car to prepare a report, appellant started to drive away and only stopped when police yelled at him. Further, when he went to two different police stations to be processed, appellant threatened the arresting officer by saying his entire family was "connected," adding "[y]ou'll see what

happens to you." The arresting officer later testified he felt appellant threatened him.

Appellant's job was terminated, effective May 9, 2013, for conduct unbecoming a public employee, in light of his attempt to misuse his office to avoid arrest for DWI and to threaten and intimidate the arresting police officer. Significantly, by the second quarter in 2013, the last quarter in which pension contributions were made on his behalf, appellant had credited PFRS service of twenty years, four months.

Appellant appealed from a December 2013 final administrative action of the Civil Service Commission upholding his removal from his position as a corrections officer. We affirmed his termination on June 9, 2015 (In re Seminario, Docket No. A-2262-13). However, in 2014, while his appeal was pending, appellant filed for disability retirement benefits. A doctor found appellant was permanently and totally disabled during his employment as a corrections officer, due to his three work-related injuries.

At a February 2016 meeting, the Board concluded appellant left his job due to a disciplinary termination, not a disability. Accordingly, it cited to N.J.S.A. 43:16A-8 and denied his request for disability retirement benefits. The Board reasoned that appellant could never return to his corrections officer

position, as required by statute, if his disabling condition "vanished or materially diminished." The Board also voted to forfeit appellant's final three years of service and salary credit, based on his dishonorable service as attributable to the DWI incident. This reduced appellant's creditable PFRS service to under twenty years.

Appellant appealed the Board's decision and the matter was transferred to the Office of Administrative Law for a hearing. On June 21, 2018, the ALJ reversed the Board's determination of appellant's ineligibility to apply for disability benefits but affirmed the three-year forfeiture. In its September 11, 2018 decision, the Board rejected the ALJ's conclusion as to appellant's eligibility for disability retirement benefits but affirmed the ALJ's ruling regarding the forfeiture. The Board concluded appellant qualified for a deferred retirement benefit after he turned fifty-five years old.

On appeal, appellant claims the Board's decision is unduly harsh and contrary to the Legislature's intent to afford disability benefits to those individuals whose dishonorable conduct occurred after they were disabled. He also argues the penalties imposed by the Board violate the "excessive fines" clause of the Eighth Amendment to the United States Constitution. We disagree.

A public employee must provide "honorable service" to receive pension or retirement benefits. N.J.S.A. 43:1-3(a); N.J.A.C. 17:1-6.1(a); see Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) (noting all of New Jersey's public pension statutes have an implied requirement of honorable service, and forfeiture can be ordered for employees who violate that requirement). The Board is authorized to order forfeiture, in whole or in part, "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable." N.J.S.A. 43:1-3(b); N.J.A.C. 17:1-6.1(a), (c). Ordinarily, to require forfeiture of the portion of a member's pension that accrued prior to the misconduct, the Board must find the misconduct was related to the member's service. Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252, 263 (1981). Forfeiture is not limited to misconduct resulting in a criminal conviction. Corvelli, 130 N.J. at 552. Rather, "[t]he term 'honorable service' . . . is sufficiently generic to encompass a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction." Ibid.

Forfeiture of a public employee's pension is governed by the following factors enumerated by our Supreme Court in Uricoli v. Police & Firemen's

5

Retirement System, 91 N.J. 62, 77-78 (1982), and codified in N.J.S.A. 43:1-3(c):

> (1) the member's length of service; (2) the basis for retirement; (3) the extent to which the member's pension has vested; (4) the duties of the particular member; (5) the member's public employment history and record covered under the retirement system; (6) any other public employment or service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the member's public duties; (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

The Board may attribute more weight to factors (7), (8), and (9), when applicable. See Corvelli, 130 N.J. at 552-53 (holding total pension forfeiture "was justified by . . . application of Uricoli factors [(7), (8), and (9)]"). Here, it is evident that the Board, in its February 9, 2016 decision, considered all eleven Uricoli factors when addressing appellant's conduct during the DWI incident. The Board determined that appellant's misconduct "demonstrated a high degree of moral turpitude and that there was a direct relationship between his misconduct and his duties as a [c]orrections [o]fficer." It also considered a forfeiture of service and salary from the date of his offense forward, but found

6

such an approach would trigger "too lenient a penalty." The Board concluded one year should be forfeited as dishonorable for each of the three offenses listed in its decision. Accordingly, it voted to forfeit the final three years of appellant's service and salary. Separately, the Board denied appellant's request to file for accidental disability retirement benefits, finding he left his job as a corrections officer based on his disciplinary termination, not a disabling condition.

There are two types of disability retirement for police officers: ordinary disability and accidental disability. N.J.S.A. 43:16A-6; N.J.S.A. 43:16A-7. Typically, ordinary disability benefits are less generous than accidental disability benefits. See Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008) ("[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." (citing Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189, 194 (2007))).

N.J.S.A. 43:16A-7 allows a PFRS employee to retire on an accidental disability retirement allowance, provided the medical board certifies the employee's permanent disability following a traumatic work-related event. Importantly, however, N.J.S.A. 43:16A-8(2) mandates that disability retirees "return to duty once their disability has 'vanished or has materially diminished.'"

Cardinale v. Bd. of Trs., Police and Firemen's Ret. Sys., 458 N.J. Super. 260, 262 (App. Div. 2019) (holding a PFRS member who separated from employment by irrevocably resigning from active duty to settle disciplinary charges rendered that member, a police officer, ineligible for ordinary disability benefits because he could never return to work as contemplated by the disability retirement statutory framework).

Here, the Board found appellant's job was terminated prior to his application for disability retirement benefits, and that his termination from employment made returning to his duties impossible. The Board stated appellant "left employment due to his termination, not a disabling condition, and could never return to employment as required by statute should the disabling condition be found to have vanished or become materially diminished." The Board concluded that "[g]ranting a disability retirement under these circumstances would be in contravention of the statutory scheme."

We recognize "[o]ur review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we will not overturn an agency decision "unless there

is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)). Nor will we overturn an agency decision merely because we would have come to a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011). We are not, however, bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196.

Applying this standard of review to the matter before us, we conclude the final agency decision is supported by sufficient credible evidence on the record as a whole, Rule 2:11-3(e)(1)(D), and is not arbitrary, capricious or unreasonable. To the extent we have not specifically addressed appellant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0824-18T4